MALCOLM McDERMOTT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 126. Promulgated June 1, 1944.

*Malcolm McDermott* pro se.
*Elmer L. Corbin, Esq.*, for the respondent.

#### OPINION.

HILL, *Judge*: This proceeding involves a determination of a deficiency of $261.89 in income tax for 1939. Petitioner is an individual residing in Durham, North Carolina. Two issues are presented, namely, (1) whether a prize of $3,000 received by petitioner constitutes taxable income, and (2) whether petitioner is entitled to deduct North Carolina sales tax added to the price of merchandise purchased by him. The tax return for the period in question was filed with the collector for the district of North Carolina at Greensboro. The facts are stipulated and are found accordingly.

In 1928 Erskine M. Ross died in California, leaving a will containing a clause as follows:

11th: I give, devise and bequeath out of my said estate to the American Bar Association the sum of $100,000 to be by it safely invested, the annual income of which to be offered and paid as a prize for the best discussion of a subject to be by it suggested for discussion at its preceding annual meeting.

On petition of the American Bar Association this clause was construed by the Superior Court of Los Angeles County, California. The court found that it was decedent's intention that the income from the bequest available to be offered as a prize be offered as a single prize. It ordered that the class of contestants be determined by the American Bar Association and that "the American Bar Association shall have generally the power to handle and administer the trust created by said bequest as in the judgment and discretion of the American Bar Association may be right and proper."

In furtherance of the trust, the American Bar Association announced a prize of $3,000 to be awarded for the best essay submitted for the year 1939 entitled, "To What Extent Should Decisions of Administrative Tribunals be Reviewable by the Courts?" Petitioner submitted the winning essay and duly received the $3,000. He did not include such sum in his income tax return for 1939.

During 1939 petitioner paid $22.16 as North Carolina retail sales tax imposed by chapter 127, Public. Laws of 1937, and chapter 158, Public Laws of 1939, and passed on to him by retail merchants. He deducted this amount from his gross income.

Respondent adjusted petitioner's 1939 net income by adding the $3,000 to income and disallowing the $22.16 tax deduction. The contested deficiency arises from these adjustments.

The factual situation surrounding the receipt of the $3,000 is in some respects an unusual one and this may account for the parties' apparent inability to adopt a consistent theory of the case. They agree, as do we, that sections 22 (a) and (22) (b) (3) of the Internal Revenue Code are involved. However, confusion exists as to the starting point of the transaction, be it a gift as contended by petitioner or compensation paid as urged by respondent, and as to its subject matter. The termination of the transaction is, of course, the receipt of the $3,000 by petitioner. But does the payment have its inception with Ross or with the American Bar Association? And are we talking about income arising from the $100,000 turned over to the American Bar Association under the terms of Ross' will, or alleged income of petitioner received in payment for services rendered? The answers to the preliminary questions are to be found by an analysis of the undisputed evidentiary facts.

The prize received by petitioner, known as the Ross Essay Prize, had its origin in the will of Erskine M. Ross. Of this there can be no doubt. Clause eleventh of the will, as construed by a California Superior Court, and we think properly so, set up a trust to be administered by the American Bar Association, the annual income of which was to be paid to a person selected by the trustee. Petitioner was the person selected to receive the income for the year 1939. Hence, he was the ascertained income beneficiary of the trust for that year and the moneys which he received were necessarily distributable to him as such. It is of no moment that the $3,000 check was drawn by the American Bar Association or that the contest resulting in the selection of petitioner as the recipient thereof was conducted by it. These acts were performed by the Association simply in its fiduciary capacity as trustee of the trust charged with its administration. The facts clearly show that the money paid was income from Ross' $100,-000 testamentary gift in trust and was not a gift from the American Bar Association. Consequently the purposes, objectives, and tax status of the American Bar Association need not be considered. Therefore, we resolve the question upon the premise that petitioner received $3,000 of the income of the trust in the year involved as a duly designated distributee thereof and accordingly we hold that he is taxable thereon. It is enough to support the taxation of the $3,000 in petitioner's hands that the $3,000 was trust income and was received by

him as such. It matters not whether it be deemed that petitioner received the prize money as consideration for his labor in producing a winning essay or received it merely as beneficiary of a trust whose status as such beneficiary was established by the production of such essay. The fact abides that he received income of a trust in accordance with the provisions thereof.

In *Heiner* v. *Beatty*, 17 Fed. (2d) 743, the Third Circuit Court had before it what we regard as an analogous situation stemming from the will of Andrew Carnegie. By his will Carnegie provided for annuities of a specified amount to a number of persons, among whom was Beatty; and he directed his executor and trustee to set apart and hold in trust separate funds for each annuitant sufficient to produce income to pay the respective annuities. Beatty urged that the annuity was a gift exempt from taxation under a section of the 1918 Act in all respects similar to section 22 (b) (3) of the Code. The Government there, as here, relied on the general definition of gross income, which likewise was the same. In holding the annuity taxable to Beatty the court said: "What the will intended the annuitant here to receive and what actually he did receive was income derived from a source which we think is sufficiently definite to fall within the statute's denomination of 'income derived from any source whatever.'"

Nor do we think the fact that petitioner here had no interest in the principal fund of $100,000 calls for a conclusion that he is not to be taxed on the income derived from the fund and actually received by him. In *Irwin* v. *Gavit*, 268 U. S. 161, Justice Holmes said in speaking for the Court:

\* \* \* if a fund were given to trustees for A for life with remainder over, the income received by the trustees and paid over to A would be income of A under the statute. It seems to us hardly less clear that even if there were a specific provision that A should have no interest in the corpus, the payments would be income none the less, within the meaning of the statute and the Constitution, and by popular speech. In the first case it is true that the bequest might be said to be of the corpus for life, in the second it might be said to be of the income. But we think that the provision of the act that exempts bequests assumes the gift of a corpus and contrasts it with the income arising from it, but was not intended to exempt income property so-called simply because of a severance between it and the principal fund. No such conclusion can be drawn from *Eisner* v. *Macomber*, 252 U. S. 189, 206, 207, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570. The money was income in the hands of the trustees and we know of nothing in the law that prevented its being paid and received as income by the donee.

Section 111 (a) of the Revenue Act of 1942 amended section 22 (b) (3) of the Internal Revenue Code. The second sentence thereof now reads as follows: "There shall not be excluded from gross income under this paragraph, the income from such property, or, in case the gift, bequest, devise or inheritance is of income from property, the amount of such income." While section 22 (b) (3) did not contain

this specific language in 1939, the year in question, the amendment did not change the law which then obtained, but merely wrote into the code the construction given to the existing law by *Irwin* v. *Gavit*, *supra*. See Senate Report No. 1631, 77th Cong., 2d sess., Calendar No. 1683.

There is no question but that the $3,000 received by petitioner constituted income arising from the investment of the $100,000 trust fund administered by the American Bar Association in accordance with Ross' will. Under the statutory provisions referred to, as construed by the cases cited, we conclude that petitioner is liable for income tax thereon and it is so held.

The second issue presents the question of whether petitioner, as a consumer, is entitled to deduct the North Carolina sales tax. It is to be observed that section 23 (c) (3) of the Internal Revenue Code, added by section 122 of the Revenue Act of 1942, which in certain circumstances permits the purchaser to deduct retail sales taxes, is inapplicable. It applies to taxable years commencing after December 31, 1941. We are concerned with taxes passed on to petitioner and admittedly paid by him in 1939 and we must apply the rule as it then existed.

In order to be entitled to a deduction for taxes paid, a petitioner must show not only that he paid the taxes, but that the taxes were imposed upon him by the taxing authority. *Eugene W. Small*, 27 B. T. A. 1219; *Falk Corporation*, 23 B. T. A. 883; affd., 60 Fed. (2d) 204. The taxes in question were levied by chapter 127, Public Laws of 1937, and chapter 158, Public Laws of 1939, of the State of North Carolina, which in all material respects are the same.

In *Leonard* v. *Maxwell*, 3 S. E. (2d) 316, the Supreme Court of North Carolina held that under chapter 127, Public Laws of 1937, the tax on gross sales of retail merchandise is levied on the privilege of engaging or continuing in the business of selling tangible personal property, notwithstanding the opportunity afforded the retail merchant to pass the tax on to the consumer. This holding of the state court is controlling upon us. *Federal Land Bank of St. Paul* v. *Bismark Lumber Co.*, 314 U. S. 95. Since the sales tax was not imposed upon petitioner, respondent properly disallowed the deduction thereof.

*Decision will be entered for respondent.*