Israel Strauss and Hilda Strauss v. Commissioner.
Strauss v. Commissioner
Docket No. 10396.
United States Tax Court
1947 Tax Ct. Memo LEXIS 345; 6 T.C.M. (CCH) 830; T.C.M. (RIA) 47202; 1947
*345 Harry L. Brown, Esq., Room 1518, 125 Park Ave., New York, N. Y., for the petitioners. William F. Evans, Esq., for the respondent. OPPER
Memodandum Findings of Fact and Opinion OPPER, Judge: By this proceeding petitioners seek a redetermination of a deficiency of $4,098.37 in income tax for the year 1943. The inclusion in taxable income of items of $3,322.25 for 1942 and $3,106 for 1943, representing an understatement of fees received by petitioner, Dr. Israel Strauss, (hereinafter sometimes referred to as petitioner), has been agreed to by petitioners. The sole question for our consideration is whether $10,000 received by petitioner during 1942 [1] constituted a gift or income taxable to him. Findings of Fact Petitioners reside at 116 West 59th Street, New York, New York. They filed joint income tax returns on a cash receipts and disbursements basis for 1942 and 1943 with the collector for the third district of New York. Petitioner is a physician, and outstanding in his field of neurology and psychiatry. He was largely responsible for the formation some years ago in New York of the Committee *346 for Mental Hygiene for Jews, and was president of that Committee, serving without compensation. On its reorganization in 1927 its name was changed to the Jewish Mental Health Society. This was in turn changed to The Society of the Hillside Hospital, which established and operated the Hillside Hospital, a non-profit, non-sectarian institution to care for and aid the curable mentally ill. Its attentions are particularly directed to patients in the middle and lower income groups. Petitioner contributed much time and effort to the work and continued as president. He was available as a consultant to the hospital staff; he attended monthly medical conferences at the hospital, and assisted by frequently lecturing under the auspices of the hospital. Petitioner always gave as much time as was needed by the hospital. Petitioner had maintained his own practice, but by the years in question it had diminished and his income was low for a man of his standing in the field. The gross income reported [2] by petitioners for 1942 and 1943 was respectively $3,607.42 and $6,047.09. On both of these returns the question "5. Did you receive during your taxable year any amount claimed to be nontaxable other *347 than interest reported in Schedule A (see Instruction H)?" was answered "no." In the latter part of 1941 Dr. J. J. Golub, a personal friend of petitioner, conceived an idea that petitioner's friends should recognize in some dignified way his fundamental contribution to society. The occasion for this thought was said to be the imminence of the opening of the Hillside Hospital and the approach of petitioner's seventieth birthday. Dr. Golub spoke of the idea to Dr. Emanuel Libman, also a good friend of petitioner, and he concurred. In furtherance of the suggestion, Dr. Golub and Dr. Libman approached other friends of petitioner. At a meeting at Dr. Libman's office of those interested, the suggestions of a testimonial dinner, a set of engrossed resolutions, or the establishment of a research fund to be placed at petitioner's disposal were considered and rejected in favor of presenting petitioner with a purse of money. In the discussions between Dr. Libman and Dr. Stephen S. Wise, another friend of petitioner, there was no intimation of any connection between petitioner's service *348 in Hillside Hospital and the purse to be presented to him. At a later meeting some of the contributors wanted to know whether the amount of their contribution could be deducted for their respective Federal income tax purposes, and whether, knowing petitioner to be a sensitive person, there was a more dignified way of presenting the money to him than by giving him numerous individual checks. At this meeting it was suggested that the contribution might be made through the Dr. Herbert L. Celler Foundation, Inc., of which Dr. Libman was a member of the board of directors and in which he was active. Petitioner's friends raised the sum of $10,000. Dr. Libman received all of the checks of the individuals. The Celler Foundation is a corporation organized to enable young medical students to do research work and partially release them from the economic urge to make a living. Its express purpose is the voluntary establishment of awards, fellowships and scholarships to enable selected individuals to pursue research for the advancement of medical and allied scientific knowledge. By letter dated April 27, 1939, the Deputy Commissioner of Internal Revenue advised the Foundation that it was entitled *349 to exemption from Federal tax, and that contributions made to it by an individual donor might be deducted by the contributors for Federal tax purposes. Edwin H. Stern was president of the Foundation in 1939 and 1942. In 1942 Dr. Libman asked Stern whether, if the $10,000 purse was put through the Foundation, the donors would be relieved of income tax by permitting them to claim a deduction of their individual contributions. Stern referred Dr. Libman to Stern's lawyer who advised that this purpose could be accomplished if the money was paid over to the Celler Foundation. The checks were sent to Dr. Libman for the express purpose of being turned over to petitioner. Dr. Libman sent Stern the numerous checks aggregating $10,000 and instructed Stern to send petitioner a check for that amount accompanied by a letter in accordance with the draft placed in Stern's hands. The letter accompanying the $10,000 check to petitioner was written by Stern but was not composed by him. The letter read as follows: "April 1, 1942. "Dr. Israel Strauss, 116 West 59th St., New York City. "Dear Dr. Strauss: "It gives me pleasure to enclose herein a check for $10,000. which has been issued to you as *350 a grant by the Herbert L. Celler Foundation, Inc. "This grant, made possible by donations from your friends, is intended to enable you to give your maximum attention for the next two years to the development of the Hillside Hospital. Your friends are moved to do this because of the great educational value of your enterprise. "Since I feel you will wish to know who the donors are, a list has been made on the next page. "With best wishes, I am, Sincerely, "(Signed) Edwin H. Stern, President." DONORS Dr. Albert Beg Henry A. and I. S. Channin Joseph F. Cullman, Jr. Dr. S. S. Goldwater Dr. J. J. Golub Dr. Julius Lempert Rosalie J. Leventritt Dr. E. Libman Dr. H. Lorber Dr. E. Moschcowitz Mt. Sinai Hospital through Waldemar Kops Dr. Herman Schwarz Dr. Dudley Schoenfeld Dr. A. Strauss Rev. Dr. S. S. Wise The check in the sum of $10,000 was issued by the Foundation. No board of directors meeting was held by the Foundation in connection with this transaction. No such meetings had been held for several years. The Foundation's investments had ceased to produce income. Petitioner was somewhat embarrassed on the receipt of the letter and the check, but was gratified to *351 learn that his friends thought so well of him. He recognized the letter of transmittal stated that the money was to enable him to give more attention to the hospital. He did not think that he gave the hospital any more or less attention after receipt of the check. Had petitioner, on receipt of the letter and check, known that he could not continue his activities at the hospital, he would have advised the donors of his change of mind, if he did not return the check. Petitioner deposited the $10,000 check in his own name and used it for his own purposes. Petitioner had never indicated that he felt he should be paid money for what he was doing for the Hillside Hospital or that he was going to lessen or stop his activities for Hillside. The $10,000 received by petitioner in 1942 was income to him in that year as determined by respondent. Opinion Disposition of the case at bar is not rendered less difficult by the refreshing disclosure of petitioner's service to mankind without expectation of monetary compensation. Whatever the strength of the sympathetic appeal, however, we are not permitted to overlook the realities of all applications of the law of taxation. If the payment in question *352 was made as "compensation for personal services," it was income and not a gift. Internal Revenue Code, section 22 (a). Wanda v. Van Dusen, 8 T.C. 388, 393. We find no escape from the conclusion that in determining whether the $10,000 received by petitioner in 1942 was a gift or was income, and as such taxable to him, petitioner is the victim of his own benefactors. [3] Had they pursued the original impulse and directly or as a group presented petitioner with the "purse," respondent would be without justification for urging that the funds constituted income. But in their desire to secure for themselves the substantial monetary benefit of deductions on their individual *353 income tax returns, the donors directed their contributions through an already existing and recognized charitable organization. Whether the Foundation went beyond its established purposes is a question we are not called upon to decide. It is at least clear that in its letter of transmittal, the Foundation expressed as the consideration for its grant, the continued service by petitioner to the hospital, and even went so far as to stipulate the period which the service was to cover. In the somewhat related field of determining whether a payment to an employee constituted compensation for services or a gift, we have found it helpful to ascertain the manner in which the payment was regarded by the employer. See, e.g., Willkie v. Commissioner ( C.C.A., 6th Cir.), 127 Fed. (2d) 953, certiorari denied, 317 U.S. 659; cf. Lunsford v. Commissioner, ( C.C.A., 6th Cir.), 62 Fed. (2d) 740. There can be no doubt that the Foundation handled the money as a payment for services and not as a gift. Although petitioner's testimony evidences a somewhat mixed view of the nature of the transfer to him of the $10,000, *354 his recognition of an obligation to communicate any termination of his services to the hospital is indicative of an understanding of the connection between the payment and his continued services, which is in line with the letter from the Foundation. We cannot say here, as in Pauline C. Washburn, 5 T.C. 1333, "The receipt of the payment involved no subsequent obligation on petitioner's part." Whatever was the original intent of the donors, it became transformed in their election to use the Foundation. They paid their money into the Foundation and made it the principal in transmitting the payment. The Foundation impressed the character of compensation for services - and thus income - upon the money transferred to petitioner; and the outer limit of the donors' intent to make a gift must be established as the desire to contribute to a tax-exempt institution in return for its action in compensating petitioner for his professional services. McDermott v. Commissioner ( App. D.C.), 150 Fed. (2d) 585, reversing 3 T.C. 929, relied upon by petitioner, is distinguishable from every fundamental viewpoint, *355 but primarily by reason of the lack of any resemblance here to a competitive effort for a prize, on the one hand, and by reason of the expressed intention of the Foundation to compensate petitioner for services to be rendered, on the other. Decision will be entered for the respondent. Footnotes
1. Pertinent here by reason of provisions of the Current Tax Payment Act of 1943.↩
2. Exclusive of $3,322.25 and $3,106.00 understatement of fee conceded by petitioners as related above.↩
3. Petitioner's benefactors did not in fact part with a full $10,000. They actually lost only the net amount of their contributions after adjustment for an undisclosed amount of income tax that they presumably saved by obtaining a charitable deduction. If at any time they choose to raise the amount contributed to the full $10,000 by making a direct donation to petitioner of the difference, there seem little discernible objection to that action that could be raised by anyone concerned.↩